WINSTON Y. CHAN, SBN 214884
  wchan@gibsondunn.com
JOSEPH R. ROSE, SBN 279092
  jrose@gibsondunn.com
CASSANDRA L. GAEDT-SHECKTER, SBN 280969
  cgaedt-sheckter@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Defendant Paul Robeson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:13-cr-00764-WHO |
| Plaintiffs, | **DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM** |
| v. | **Hearing:** |
| ALFONZO WILLIAMS, et al., | Date:  August 16, 2018 |
| Defendant. | Time: 1:30 p.m. |
| | Place: Courtroom 4, 17th Floor |
| | Judge: Hon. William H. Orrick |

Defendant Paul Robeson, through counsel, hereby submits his Sentencing Memorandum. Mr. Robeson reserves the opportunity to respond to the government's Sentencing Memorandum and to make additional comments at the sentencing hearing in this matter.


Dated: August 9, 2018

                                        Respectfully submitted:

                                        WINSTON Y. CHAN
                                        GIBSON, DUNN & CRUTCHER LLP


                                        By:   /s/ Winston Y. Chan
                                                      Winston Y. Chan

                                        Attorney for Defendant Paul Robeson

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ..................................................................................... 1

    A.    Mr. Robeson's Plea Agreement .................................................................... 1

    B.    United States Probation Office Presentence Report ..................................... 2

    C.    Mr. Robeson's Personal Background ............................................................ 3

III.  SENTENCING RECOMMENDATION ................................................................... 4

    A.    Calculation of the Guidelines Range and Recommended Sentence ............. 5

    B.    Mr. Robeson's History and Characteristics Support the Recommended
        Sentence ........................................................................................................ 5

    C.    Need to Reflect the Seriousness of the Offense, Promote Respect for the Law,
        Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public
        from Further Crimes ...................................................................................... 6

    D.    Avoidance of Unwarranted Sentencing Disparities ..................................... 7

    E.    Any Upward Departure Beyond the Recommended Sentence is Unwarranted ........... 7

        1.    An Upward Departure Pursuant to §4A1.3(a)(1) is Unwarranted ................... 7

        2.    Mr. Robeson Also Is Not Subject to an Enhancement under USSG
            §5K2.18 ................................................................................................... 8

    F.    The Special Conditions of Supervised Release Beyond Those in the Plea
        Agreement Are Unjustified ........................................................................... 9

IV.   CONCLUSION ........................................................................................................ 13

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Tapia v. United States*,
   564 U.S. 319 (2011)........................................................................................................6

*U.S. v. Carter*,
   560 F.3d 1107 (9th Cir. 2009)........................................................................................7

*United States v. Durham*,
   995 F.2d 936 (9th Cir. 1993)..........................................................................................8

*United States v. Menyweather*,
   447 F.3d 625 (9th Cir. 2006)..........................................................................................5

*United States v. Trujillo*,
   713 F.3d 1003 (9th Cir. 2013)........................................................................................6

**Statutes**

18 U.S.C. § 521(c) ............................................................................................................8

18 U.S.C. § 521(d) ...........................................................................................................8

18 U.S.C. § 1962(d) .........................................................................................................1

18 U.S.C. § 2422(a) ....................................................................................................1, 11

18 U.S.C. § 2422(b) ........................................................................................................10

18 U.S.C. § 3553(a) ...........................................................................................1, 3, 5, 6, 7

18 U.S.C. § 3583(d) ..................................................................................................10, 11

18 U.S.C. § 20911(1) ......................................................................................................12

18 U.S.C. § 20911(5)(C) .................................................................................................12

Cal. Penal Code § 290(c) ................................................................................................11

Cal. Penal Code § 290.005(d)(5).....................................................................................12

**Other Authorities**

U.S.S.G. § 2E1.1 ...............................................................................................................5

U.S.S.G. § 3D1.2(b) ..........................................................................................................5

U.S.S.G. § 3El.l(a) .......................................................................................................1, 5

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

U.S.S.G. § 4A1.3(a)(1) ...............................................................................................................3, 7, 8

U.S.S.G. § 5K2.18 .........................................................................................................................8

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

Gibson, Dunn & Crutcher LLP

# I.    INTRODUCTION

Defendant Paul Robeson submits this sentencing memorandum in support of a sentence that has been agreed to by the government and that is recommended by the Probation Office.  The sentence of 72 months of incarceration, 3 years of supervised release, and a special assessment of $200 is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a).  Mr. Robeson has already served 60 of the 72 months while awaiting trial.  He has made the most of that time, earning his GED, completing various personal development courses, and reading books by inspirational leaders.  He is now eager to return to his young daughter, in whose life he played a major role before his incarceration.  72 months already represents a term of incarceration that is nearly twice the applicable guidelines range.  Given the factors under 18 U.S.C. § 3553(a), any longer sentence would be unreasonable.

# II.    FACTUAL BACKGROUND

## A.    Mr. Robeson's Plea Agreement

On May 10, 2018, Mr. Robeson pled guilty, pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement with the government, to Count One and Count Sixteen of the Second Superseding Indictment (filed on August 14, 2014 in the above-captioned case).  Count One charged Mr. Robeson with Racketeering Conspiracy (18 U.S.C. § 1962(d)) and Count Sixteen charged Mr. Robeson with Attempted Enticement of an Individual to Travel for Prostitution (18 U.S.C. § 2422(a)).

Under Mr. Robeson's plea agreement, the parties stipulated to a Sentencing Guidelines calculation.  Using, as required by S.S.G. § 3Dl.3(a), the offense level applicable to the higher of the two offenses to which Mr. Robeson pled (Count One [18 U.S.C. § 1962(d)]), the parties agreed to the following calculation:

1. Base Offense Level (U.S.S.G. § 2El .1): 19

2. Acceptance of Responsibility (U.S.S.G. § 3El.l(a)): -2

3. Adjusted Offense Level: 17

The parties further agreed that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors, an appropriate disposition of the case

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

would be for the Court to impose a sentence of (a) a concurrent sentence of 72 months imprisonment; (b) three years of supervised release; and (c) a $100 special assessment for each of the two counts for which Mr. Robeson has pled guilty. The parties also agreed that the Court should impose two special conditions of supervised release:

> 1. <u>Special Condition (Searches)</u>: The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

> 2. <u>Special Condition (No Gang Association)</u>: The defendant shall not associate with any gang or gang member, including CDP and CDP members. The defendant shall not possess or display any gang-related symbol, insignia, sign, or gesture.

**B.    United States Probation Office Presentence Report**

On July 26, 2018, the U.S. Probation Office disclosed a final Presentence Report ("PSR"). The Probation Office has recommended a sentence consistent with the parties' above agreement, including a 72-month term of imprisonment; a 3-year period of supervised release subject to certain conditions (including but not limited to those stipulated in the above-referenced plea agreement); and a special assessment of $200.

In arriving at the final recommendation, the Probation Office calculated the total offense level as 17 and the criminal history category as III. Given the offense level and criminal history category, the guideline recommendations include: a term of custody of 30 months to 37 months; a period of supervised release of one to three years; a fine of $5,000 to $50,000; and a special assessment of $200.

Gibson, Dunn & Crutcher LLP

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

The Probation Office determined that the 72-month term of imprisonment agreed to by the parties, an upward departure from the guidelines range, is appropriate[1]. The Probation Office reached this recommendation after considering Mr. Robeson's personal history and characteristics (18 U.S.C. § 3553(a)(1)), the need to promote respect for the law and to protect the public from further crimes of the defendant (18 U.S.C. §§ 3553(a)(2)(A), and (a)(2)(C)) and the need to avoid unwarranted sentencing disparities between Mr. Robeson and his co-defendants (18 U.S.C. § 3553(a)(6)). The Probation Office also noted that Mr. Robeson's criminal history category (III) may be under-represented (pursuant to USSG §4A1.3(a)(1)) and that a category of IV may be more accurate.

With the exception of some of the special conditions to supervised release, as discussed below, Mr. Robeson agrees with the Probation Office's conclusion that the parties' stipulated sentence is appropriate.

## C.    Mr. Robeson's Personal Background

Mr. Robeson was born in San Francisco and was raised here by his mother, Rebecca Flowers. PSR ¶ 97. As a child, Mr. Robeson had almost no contact with his father. *Id.* His childhood with his mother was difficult: she could be verbally and physically abusive and her romantic partners were worse (at times cooking crack cocaine in the apartment, consuming large quantities of alcohol, and physically abusing Ms. Flowers). *Id.* ¶ 100. Fortunately, Mr. Robeson found outlets in sports, including basketball, baseball, and football, and in the Boys and Girls Club, where he enjoyed painting, bike riding, reading, writing and swimming. *Id.*

In 2004, Mr. Robeson began a relationship with Aleila Lofton, with whom he had a daughter, Alexia Robeson (now 9). *Id.* ¶ 101. Though the couple separated around 2009, Ms. Lofton remains a supporter of Mr. Robeson's, going so far as to offer for him to stay at her residence after his release. *Id.* ¶¶ 101-103. Ms. Lofton describes Mr. Robeson as "caring, loving, passionate, and hardworking," and as a man with "a good heart and good intentions." *Id.* ¶ 102. Mr. Robeson also has always had a

---

[1] The Probation Office recommendation also differed from the guidelines in determining that a fine is not warranted as a result of Mr. Robeson's financial condition.

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

Gibson, Dunn & Crutcher LLP

close relationship with his daughter and Ms. Lofton confirms that Mr. Robeson "always puts his daughter first." *Id.* ¶¶ 101-102.

Mr. Robeson has been incarcerated since the date of his arrest in June 2013. *Id.* ¶ 114. He has made the most of his time in custody, using the time to educate himself and to fix the personal issues that plagued him before his arrest. Mr. Robeson has obtained his GED and has completed various courses, including an anger management course, a 60-day alcohol and drug education program (Deciding, Educating, Understanding, Counseling and Evaluating, or "DEUCE"), and a communication skills course designed to foster healthy relationships. *Id.* ¶¶ 107, 111-113.

Mr. Robeson's character, and his importance to the lives of his family and friends, is underscored by the letters than have been submitted on his behalf. These are attached hereto as Exhibits A-F (letters from Ms. Flowers, Ms. Lofton, Carlos Harper [uncle], Jerome Matthews [friend], Devin Ruppenstein [friend], and Jaclyn Soares [friend] respectively). In these letters, he is described as kind, considerate, and dependable. Ms. Soares, for example, explains how Mr. Robeson immediately came to her aid when her refrigerator stopped working in the first week after she purchased a new home. *See* Ex. F. Ms. Ruppenstein recalls Mr. Robeson taking his daughter to school, styling his daughter's hair, and helping his mother move to a new home. *See* Ex. E. Many of the letters describe Mr. Robeson as a determined father who hopes to once again be a major part of his daughter's life once he is released and who they expect to fulfill that desire. *See* e.g., Exs. B-D, F. Each of the letter-writers has also committed—in appreciation of the support that Mr. Robeson has shown to them over the years—to support Mr. Robeson in making a new life for himself after his release. Mr. Robeson accepts responsibility for his prior mistakes and is both prepared and committed to not repeat them.

### III.    SENTENCING RECOMMENDATION

As agreed to by the parties and as recommended by the Probation Department, a sentence of (1) a 72-month term of imprisonment, (2) a three-year period of supervised release, and (3) a $200 special assessment is appropriate in this case. This sentence includes a period of incarceration that is nearly twice the top of the Guidelines range. Given the properly calculated Guidelines sentence, the history and characteristics of the defendant, the need for the sentence to comply with the penological

goals of sentencing, and the obligation to avoid sentencing disparities, the recommended sentence is more than sufficient. 18 U.S.C. § 3553(a).[2]

## A. Calculation of the Guidelines Range and Recommended Sentence

Mr. Robeson agrees with the Probation Office's computation of the guidelines range. First, the applicable offense level calculation is undisputed. Under the plea agreement, Mr. Robeson's base offense level is 19. Plea Agmt. ¶ 7; PSR ¶ 21; *see also* USSG §§ 3D1.2(b), 2E1.1. He is eligible for a two-point reduction for acceptance of responsibility. Plea Agmt. ¶ 7; PSR ¶ 28; *see also* USSG § 3E1.1(a). His adjusted offense level is therefore 17. Plea Agmt. ¶ 7; PSR ¶ 29.

The Probation Office has further calculated Mr. Robeson's criminal history score as six, establishing a criminal history category of III. PSR ¶ 43. Taking this criminal history category together with the adjusted offense level, the Probation Office calculates the guideline ranges to be: a term of custody of 30 months to 37 months; a period of supervised release of one to three years; a fine of $5,000 to $50,000; and a special assessment of $200. PSR Sentencing Rec. at 1. Mr. Robeson does not dispute this calculation.

The Probation Office recommends, though, that the sentence agreed to by the parties be imposed. PSR Sentencing Rec. at 1. This sentence (a 72-month term of imprisonment, a three year period of probation, and a $200 special assessment) represents an upward departure from the guidelines. For the reasons set forth below, it is more than sufficient and (in light of all parties' agreement) should be adopted by the court.

## B. Mr. Robeson's History and Characteristics Support the Recommended Sentence

As the letters submitted on his behalf demonstrate, Mr. Robeson is a capable and caring man who plays an important role in the lives of his friends and family. In particular, prior to his incarceration, Mr. Robeson was an active father to his daughter, Alexia. *See* Exs. B, D, F. He feels substantial responsibility to care for his daughter and that responsibility alone warrants lenience. *See United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (finding that a defendant's family ties and responsibilities may justify a shorter sentence). Further, Mr. Robeson is a better man today

---

[2] Mr. Robeson respectfully submits that the other considerations enumerated in section 3553(a) are immaterial to this case.

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

Gibson, Dunn & Crutcher LLP

than he was on the day of his arrest.  He is a rehabilitation success story, having received his GED and determinedly worked on his personal development (both by taking relevant courses and, as Ms. Ruppenstein notes, by reading books geared toward his development) while incarcerated.  PSR ¶¶ 107, 111-113; Ex. E.  This too counsels for leniency in sentencing.  *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) ("post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—[is] a critical factor to consider in the imposition of a sentence").  Finally, the facts of Mr. Robeson's life reveal the difficult circumstances that he has had to overcome.  Mr. Robeson was raised by an abusive mother, with no father figure, surrounded by drugs, alcohol, and violence.  *See, supra*, p. 3.  In this context, his good character and the progress he has made are that much more remarkable.

**C.      Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Further Crimes**

Courts must also ensure that a sentence serves four penological goals:  retribution, deterrence, incapacitation, and rehabilitation.  *Tapia v. United States*, 564 U.S. 319, 325 (2011); *see also* 18 U.S.C. § 3553(a)(2)(A)-(C).  The recommended sentence satisfies these interests.

Mr. Robeson has already served more than 60 months of the recommended 72-month term of incarceration.  As his friends and family confirm, this period of incarceration has had its desired goal.  Mr. Robeson deeply regrets the actions that led him to his current position, including associating with CDP members and encouraging prostitution.  He does not intend to repeat those behaviors.  As Mr. Robeson's uncle puts it: "[I]f Paul can be released from that facility, [] he would go straight to his little girl and the mother that is outside San Francisco and try to rebuild his family."  Ex. C.  Similarly, his friend, Jerome Matthews states: 'He is determined to stay out of trouble and be a better person.  He wants to come home and be the best father he can be and focus on his family."  Ex. D.  Other letters echo this sentiment.  Mr. Robeson accepts responsibility for his offenses, understands their gravity, and has been deterred from repeating them.  A sentence that adds another year of incarceration and three years of supervised release to the time he has already served certainly will

accomplish its penological aims as to Mr. Robeson. Given that the term of incarceration will be nearly twice the top of the guidelines range, it will also have a broader deterrent effect.

**D.      Avoidance of Unwarranted Sentencing Disparities**

Finally, the recommended sentence "avoid[s] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *See* PSR Sentencing Rec. at 2; 18 U.S.C. § 3553(a)(6). The Probation Office notes that a sentence above the guidelines range prevents an unwarranted disparity between Mr. Robeson's sentence and that of his co-defendants. But the underlying racketeering activity that Mr. Robeson has pled guilty to is far less serious than the underlying offenses for which his co-defendants have been found guilty. *See U.S. v. Carter*, 560 F.3d 1107, 1121 (9th Cir. 2009) (noting that different sentences are warranted when co-defendants are found convicted of different crimes and stating that "a sentencing disparity based on cooperation is not unreasonable"). A longer sentence would create intolerable disparities between Mr. Robeson and individuals convicted of the *same conduct*, who (given the guidelines range) are already likely to be sentenced to much shorter terms of imprisonment. This factor, too, counsels against any longer sentence.

**E.      Any Upward Departure Beyond the Recommended Sentence is Unwarranted**

Though Mr. Robeson does not dispute the Probation Office's conclusion, he does take issue with two of its suggested bases for upward departure (at least one of which appears to be baked into the recommended sentence in any case).

**1.      An Upward Departure Pursuant to §4A1.3(a)(1) is Unwarranted**

The Probation Office first suggests that Mr. Robeson's criminal history may be better represented by a Criminal History Category of IV rather than III and that an upward departure pursuant to §4A1.3(a)(1) may therefore be warranted. Under this section, an upward departure is warranted if "if reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." No such information exists in Mr. Robeson's case.

First, many of the instances of criminal conduct reflected in the PSR but not accounted for in the Criminal History Category are simply a list of arrests without any further information, including

incident reports. *See* PSR ¶¶ 65-95. These unquestionably may not be considered in an analysis

pursuant to §4A1.3(a)(1). *See United States v. Durham*, 995 F.2d 936, 938 (9th Cir. 1993) ("A court

may not consider a prior arrest record itself in departing from the applicable guideline range").

Second, the arrests for which incident reports are available are not similar to Mr. Robeson's

conduct in the instant case, are generally less serious than the present conduct, and do not suggest that

Mr. Robeson is more likely to commit other crimes than his Criminal History Category of III already

suggests. Many of the incidents involve conduct by other people for which Mr. Robeson was merely

present. *See* PSR ¶¶ 44-46, 58. Further, they bear little similarity to the conduct alleged to in the

relevant indictment or pled to by Mr. Robeson. None of the incidents relate to gang activity or to

persuading an individual to engage in prostitution. The vast majority of the incidents described in the

PSR relate to traffic violations and to arrests made as a result of Mr. Robeson's outstanding warrants.[3]

None suggest that a Criminal History Category greater than III is warranted.[4]

### 2.    Mr. Robeson Also Is Not Subject to an Enhancement under USSG §5K2.18

The PSR states that "if the defendant is subject to an enhanced sentence under 18 U.S.C. §

521 (pertaining to criminal street gangs), an upward departure may be warranted." PSR ¶ 142. This

enhancement applies only if the defendant has presently been convicted of a federal felony involving

a controlled substance, a federal felony crime of violence that has as an element the use or attempted

use of physical force against the person of another, or a conspiracy to commit one of the above

crimes, and he has been convicted of one of those crimes (or an equivalent state offense) within the

last five years. *See* 18 U.S.C. § 521 (c)-(d). Because Mr. Robeson has not now been convicted of

such an offense and because he has not been convicted of such an offense in the past five years, this

enhancement plainly does not apply.

---

[3] The circumstances surrounding the warrants' issuance is presently unknown, though it appears
that at least some of the warrants were issued while Mr. Robeson was in custody for other
matters. It should also be noted that Mr. Robeson is presently working to resolve his remaining
outstanding warrants.

[4] Even if a Criminal History Category of IV was used, the resulting Guidelines range for a term of
imprisonment (37-46 months) is still well below the recommended sentence.

Gibson, Dunn &
Crutcher LLP

DEFENDANT PAUL ROBESON'S SENTENCING MEMORANDUM – CASE NO. 3:13-CR-00764-WHO

**F.    The Special Conditions of Supervised Release Beyond Those in the Plea Agreement Are Unjustified**

Though Mr. Robeson agrees in large part with the Probation Officer's recommended sentence, he objects to the following conditions of supervised release:

3.    You must use only those computers and computer-related devices, screen user names, passwords, e-mail accounts, and Internet service providers (ISPs), as approved by the Probation Officer. Computers and computer-related devices include, but are not limited to, personal computers, personal data assistants (PDAs), Internet appliances, electronic games, and cellular telephones, as well as their peripheral equipment, that can access, or can be modified to access, the Internet, electronic bulletin boards, and other computers, or similar media.

4.    You must not possess or use a computer or cell phone without the prior approval of the probation officer. "Computer" includes any electronic device capable of accessing the internet or processing or storing data as described at 18 U.S.C. § 1030(e)(1) (including cell phones), and all peripheral devices.

5.    As directed by the probation officer, you must enroll in the probation office's Computer and Internet Monitoring Program (CIMP) and must abide by the requirements of the CIMP program and the Acceptable Use Contract.

6.    You must consent to the probation officer conducting periodic unannounced examinations of your computer equipment, including cellular phone, which may include retrieval and copying of all data from your computer(s) and any peripheral device to ensure compliance with this condition, and/or removal of any such equipment for the purpose of conducting more thorough inspection. You must also consent to the installation of any hardware or software as directed by the probation officer to monitor the defendant's Internet use.

7.    You must not frequent or loiter within 100 feet of any location where children are likely to gather, or have contact with any child under the age of 18 unless otherwise approved by the probation officer. Children are likely to gather in locations including, but not limited to, playgrounds, theme parks, public swimming pools, schools, arcades, children's museums or other specific locations as designated by the probation officer. This provision does not encompass persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom you must deal in order to obtain ordinary and usual commercial services.

8.    You must register with the state sex offender registration agency as required by state law. You must provide proof of registration to the Probation Officer within three days of release from imprisonment/placement on supervision. In any state that has adopted the requirements of the Sex Offender Registration and Notification Act (42 USC sec. 16901 et seq.), you must also comply with all such requirements as directed by the Probation Officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, is a student, or was convicted of a qualifying offense.

9.    You must participate in sex offender-specific treatment, as directed by the probation officer. You are to pay part or all of the cost of this treatment, at an amount not to exceed the cost of treatment, as deemed appropriate by the probation officer. The actual copayment schedule shall be determined by the probation officer. The

probation officer may release all previous mental health evaluations to the treatment provider.

10.     As part of the treatment program, you must submit to polygraph testing as recommended by the treatment provider. However, you retain your Fifth Amendment right to refuse to answer questions asked during the course of treatment absent a grant of use and derivative-use immunity.

11.     You must not possess or use any data encryption technique or program.

12.     You must participate in a program of testing and treatment for drug abuse, as directed by the probation officer, until such time as you are released from treatment by the probation officer. You are to pay part or all of the cost of this treatment, at an amount not to exceed the cost of treatment, as deemed appropriate by the probation officer. Payments must never exceed the total cost of urinalysis and counseling. The actual co-payment schedule must be determined by the probation officer.

13.     You must abstain from the use of all alcoholic beverages.

. . .

15.     You must provide the probation officer with access to any financial information, including tax returns, and must authorize the probation officer to conduct credit checks and obtain copies of income tax returns.

. . .

17.     You must cooperate in the collection of DNA as directed by the probation officer.

Pursuant to 18 U.S.C. § 3583(d), a condition of supervised release must be reasonably related to certain of the factors in 18 U.S.C. § 3553 (the nature of circumstances of the offense and history and characteristics of the defendant; the need to afford adequate deterrence; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner) and must involve no greater deprivation of liberty than is reasonably necessary for the purposes reflected in those factors.  The Probation Office's proposed conditions listed above are not reasonably related to the sentencing factors and are not necessary.

First and most importantly, Mr. Robeson has not pled guilty to any offense that relates to treatment of children, making proposed condition 7 unreasonable.[5]  Although the Second Superseding Indictment alleges that Mr. Robeson violated 18 U.S.C. § 2422(b) (Attempt to Entice

---

[5]  The PSR states that "[t]he defendant was convicted of a sex offense which included a who [sic] he thought was a minor."  Sentencing Recommendation at 2.  This is inaccurate.

and Persuade a Minor to Engage in Prostitution), Mr. Robeson did not plead guilty to this offense and

the government has never proven that Mr. Robeson believed the undercover agent ("UC") with whom

he was communicating to be under 18.

In fact, the evidence indicates that Mr. Robeson did *not* believe the UC was under 18.  The

PSR states in its description of Mr. Robeson's offense that "Mr. Robeson asked what the UC's age

was, and she responded 16."  PSR ¶ 12.  But no record of this conversation exists[6].  Instead,

substantial evidence supports Mr. Robeson's lack of knowledge, including:

- In the only conversation relating to the UC's age that has been preserved, an October 5, 2012 call, Mr. Robeson indicates that he did not believe that the UC was under 18.  First, Mr. Robeson asked the UC October 5, "you 16 fa real?" (to which she answered in the affirmative).  Second, he told the UC that "he did not think [the UC] was a day under 19" (to which she apparently did not respond).  *See* SFPD Chronological of Investigation at 2-3.

- The advertisement that Mr. Robeson posted of the UC on myredbook.com listed the UC's age as 21-24.  *Id.* at 5.

- Mr. Robeson was prepared to present expert testimony on the UC's failure to adhere to recommended practices, including her failure to reiterate her supposed age.

Since Mr. Robeson has not pled guilty to any offense involving the treatment of minors and

the evidence suggests that he in fact is not guilty of any such conduct, neither the goal of deterrence

nor of protecting the public is served by imposing this condition.  In fact, imposing this condition

would be counter-productive to the sentencing goals.  Mr. Robeson's primary motivation for his

rehabilitation is his nine-year-old daughter.  This condition would make it more difficult for Mr.

Robeson to be a full part of her life and therefore to live the law-abiding life that he desires.

Ultimately, this condition bears no reasonable relationship to the circumstances of Mr. Robeson's

offenses or to any other factor delineated in 18 U.S.C. § 3583(d).

Likewise conditions 8 through 10 related to sex offender registration and treatment are

inappropriate.  Mr. Robeson's conviction for attempted pimping of an adult under 18 U.S.C.

§ 2422(a) does not require any kind of registration as a sex offender under California law.  *See* Cal.

Penal Code § 290(c) (list of offenses requiring registration does not include Penal Code § 266f

---

[6]  If this conversation did exist, the record of it was lost as a result of the government's negligence.  *See* Amended Defendant's Notice of Motion and Motion to Compel Discovery, Suppress Evidence, and/or Hold an Evidentiary Hearing; Memorandum of Points and Authorities in Support Thereof at 9-12 (describing destruction of relevant communications).

(pimping) or § 266i (pandering)); *see also id.* § 290.005(d)(5) (explicitly excluding "pimping" and

"pandering" from the list of out-of-state offenses that require registration in California). And the

federal Sex Offender Registration and Notification Act specifically *excludes* from the definition of a

"sex offender" those convicted of crimes involving "consensual sexual conduct" between adults. *See*

18 U.S.C. § 20911(1), (5)(C). Mr. Robeson has pled to attempted pimping of an adult and there has

never been any allegation that their interactions were anything but consensual.[7] He should not be

subject to conditions of supervised release related sex offender registration and treatment when he

does not qualify as a "sex offender" in the first place.

       The other special conditions are unnecessary in light of the actual circumstances of Mr.

Robeson's offense. He has already agreed to a search condition that includes his electronic devices,

making the additional conditions 3 through 6 related to the use of the internet gratuitous. None of his

convictions involve any "data encryption technique or program" (condition 11), a particularly vague

item that could encompass the use of any device that uses a PIN number or password, such as an

ATM machine or an online bank account. Nor do they involve any financial crimes or conduct that

would make DNA collection relevant, making conditions 15 and 17 unnecessary. Finally, while Mr.

Robeson has had past issues with drugs and alcohol, he has addressed those issues voluntarily

through the DEUCE program and has been clean and sober for at least the past 5 years while in

detention pending trial in this case, rendering conditions 12 and 13 undue restrictions on his liberty.

       Mr. Robeson and the Government have already agreed to the two special conditions of

supervised release that are applicable in this case, listed as conditions 1 and 2 in the Probation

Department's Sentencing Recommendation. The additional items suggested by the Probation

Department are unnecessary or irrelevant in light of the actual circumstances of Mr. Robeson's

offense and conviction and therefore represent a greater deprivation of liberty than is reasonably

necessary. The Court should not impose them.

---

[7] In fact, it is undisputed that they never met in person and never had any physical contact.

# IV.  CONCLUSION

For the foregoing reasons, Mr. Robeson  respectfully requests that the Court impose the sentence agreed to by the parties and recommended by the United States Probation Department, with the exception of proposed conditions 3 through 13, 15, and 17 to his supervised release.


Dated: August 9, 2018

WINSTON Y. CHAN
JOSEPH R. ROSE
CASSANDRA L. GAEDT-SHECHTER
GIBSON, DUNN & CRUTCHER LLP


By: _____
             Winston Y. Chan

Attorneys for Defendant PAUL ROBESON